UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TYLER APPEL,

                    Plaintiff,

     v.

KING COUNTY, *et al.*,

                    Defendants.

CASE NO. 2:21-cv-00621-TL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: February 17, 2023

This matter is before the Court on referral from the District Court and on defendants' motion for summary judgment. *See* Dkt. 60.

Plaintiff Tyler Appel, a former King County Jail pretrial detainee who proceeds *pro se*, brings suit under 42 U.S.C. § 1983 against King County and two King County Jail employees (Nancy Garcia and Karen Pohio) for violations of his First Amendment rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq*. After the District Court dismissed certain claims, the case has proceeded toward trial on plaintiff's claims

1  that defendants violated his rights by denying him the ability to engage in a Native American

2  religious ritual known as "smudging" while he was housed at the King County Jail.

3          Defendants have filed a motion for summary judgment arguing that plaintiff has not

4  alleged a viable claim and cannot show a constitutional violation occurred as a result of denying

5  plaintiff the ability to engage in smudging. Defendants present evidence that plaintiff's claim for

6  injunctive relief is moot because he is no longer housed at King County Jail and that he failed to

7  exhaust his administrative remedies regarding his request to smudge. Defendants also present

8  evidence of a legitimate penological interest as well as a compelling governmental interest with

9  no lesser restrictive alternatives to the prohibition of smudging in the King County Jail. Although

10  defendants provided plaintiff with a notice of this dispositive motion, plaintiff did not respond to

11  defendants' motion for summary judgment.

12          After reviewing the motion and the relevant record, the Court concludes that plaintiff has

13  failed to rebut defendants' showing that they are entitled to summary judgment as to his claims

14  regarding the ability to engage in smudging at the King County Jail because, among other things,

15  plaintiff failed to exhaust his administrative remedies and because his request to introduce

16  smudging into the facility was counter to the legitimate penological interests of the safety and

17  security of prisoners, staff, and the facility itself. Plaintiff has also failed to establish that he is

18  entitled to injunctive relief from King County because he is no longer being housed in the King

19  County Jail. Accordingly, the Court recommends that defendants' motion for summary judgment

20  be granted and that plaintiff's claims be dismissed with prejudice.

21

22

23

24

## BACKGROUND

### I.    Procedural History

Plaintiff, proceeding *pro se* and *in forma pauperis* ("IFP"), initiated this action in May 2021, raising claims relating to his request to engage in a religious ceremony known as "smudging," a Native American practice referring to the burning of sage and aromatic herbs, *see Mickel v. Wolff*, No. 379CV-00239-LRH-VPC, 2008 WL 80548, at *2 (D. Nev. Jan. 4, 2008), as well as access to religious accommodations other than smudging. Dkt. 1. Plaintiff amended his complaint on July 26, 2021. Dkt. 8.

After the Court directed service of the amended complaint, (*see* Dkt. 15), defendants King County, Karen Pohio, and Nancy Garcia filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Dkt. 21). On January 4, 2022, the Court issued a Report and Recommendation ("R&R") recommending that defendants' motion be granted in part and denied in part. Dkt. 31. Specifically, the Court recommended that all of plaintiff's claims be dismissed with leave to amend, except to the extent that he has brought claims against defendants under the First Amendment and RLUIPA for refusal to provide materials and space for smudging ("smudging claims"), these claims survived. *Id*. In addition, the Court recommended that plaintiff's claims against defendants Pohio and Garcia in their individual capacities for damages under RLUIPA be dismissed without leave to amend and should not be realleged, but claims for damages against these defendants in their official capacities could proceed. *Id*. Finally, the Court recommended that, unless plaintiff filed a motion for leave to amend in order to correct the deficiencies identified by the Court within thirty days of an Order on the R&R to file an amended complaint, the matter would proceed solely on the smudging claims under the First

Amendment and RLUIPA. *Id*. On April 13, 2022, the District Court adopted the R&R and granted in part and denied in part defendants' motion to dismiss. Dkt. 43.

Plaintiff failed to move to amend the amended complaint as directed by the District Court and, thus, only the smudging claims remain. *See* Dkt. Defendants have filed a motion for summary judgment requesting the remaining smudging claims be dismissed. Dkt. 60. Defendants also filed a notice of dispositive motion informing plaintiff that summary judgment could result in dismissal of his claims without a trial or evidentiary hearing. Dkt. 61. Plaintiff has not responded to defendants' motion. *See* Dkt.

## II.     Allegations in the Amended Complaint

As directed by the District Court, plaintiff is proceeding with his claims that defendants denied him the ability to engage in smudging for religious purposes at the King County Jail. *See* Dkt. 43. The allegations in plaintiff's amended complaint with respect to these claims are as follows.

Plaintiff alleges that in January 2021, he inquired whether there were "any religious services for Native Americans" at the King County Jail, and the Jail chaplain informed plaintiff that the Jail held no such services. Dkt. 8 at 4. Plaintiff claims that he filed a complaint form about this issue and asked for "specific religious materials" and "space" for religious ceremonies. Dkt. 8 at 5. His allegations do not specifically state the particular religious materials that he sought or the religious ceremonies for which he requested space. *See id*.

According to plaintiff, defendant Pohio responded to his complaint and denied his request for materials and space, citing "King County guidelines." *Id*. Plaintiff then appealed this response, and defendant Garcia allegedly failed to correct the issue and refused to provide him space for conducting ceremonies, instead directing him to request materials from the chaplain.

1    *Id*. Plaintiff alleges that the chaplain then denied his request. *Id*. Plaintiff seeks damages and

2    injunctive relief—specifically, that the Court direct King County to draft a policy recognizing

3    and protecting his right to practice his religion freely. Dkt. 8 at 9.

4    **III.    Defendants' Evidence**

5            Along with their motion for summary judgment (Dkt. 60), defendants have submitted

6    declarations of several individuals with knowledge of plaintiff's housing status as well as his

7    requests to engage in smudging in the King County Jail (Dkts. 62–66). Declarant Troy Bacon,

8    the Department of Adult and Juvenile Detention ("DAJD") Commander for King County Jail,

9    describes the Jail as a temporary holding facility used for pretrial detainees and inmates serving

10   sentences of less than one year. Dkt. 66 at 2, Decl. T. Bacon. Plaintiff is a former pretrial

11   detainee housed at King County Jail from October 30, 2018, through April 29, 2022, at which

12   time he was transferred to the custody of the Washington State Department of Corrections to

13   serve a prison sentence after pleading guilty to felony charges in King County Superior Court.

14   *Id*. Declarant Karen Richardson, a paralegal from the King County Prosecuting Attorney's

15   Office, states that plaintiff's current location is Stafford Creek Corrections Center ("SCCC") and

16   his latest projected release date is February 7, 2025. Dkt. 63 at 2, Decl. K. Richardson. Declarant

17   Richardson adds that, as of November 30, 2022, plaintiff has no pending or outstanding criminal

18   cases. *Id*.

19           The King County Jail is a high-rise jail facility in downtown Seattle with no traditional

20   outdoor area. Dkt. 66 at 2. The "yard-out" portion of the Jail where those housed in the Jail can

21   recreate is a high-ceilinged gymnasium area with 6-inch open-air gaps on one wall to bring in

22   fresh air. *Id*. *See also* Dkt. 66, Ex. A (three photographs of the "yard-out" area). Each housing

23   floor also has a multipurpose room where group programming and activities as typically held,

24

1   including religious services. Dkt. 62 at 2, Decl. K. Pohio. Further, the Jail is equipped with

2   smoke and heat detectors and sprinkler heads throughout as mandated by building regulations

3   and codes. Dkt. 66 at 2. The Jail houses an average of 1,200 individuals and employs a staff of

4   220 correctional officers and administrative support. *Id*.

5          As to plaintiff's requests to engage in smudging in the King County Jail, defendants have

6   submitted declarations of defendants Pohio and Garcia (Dkt. 62, Decl. K. Pohio; Dkt. 65, Decl.

7   N. Garcia), as well as one from Andrea Williams, a Records and Information Systems Program

8   Manager at DAJD who maintains booking records and records of grievances filed by individuals

9   at King County Jail (Dkt. 64, Decl, A. Williams). Declarant Williams also maintains DAJD

10  policies and handbooks. Dkt. 64.

11         DAJD, which encompasses the King County Jail, has several policies related to the

12  plaintiff's claims regarding smudging. *See* Dkt. 64. Pursuant to General Policy Section No.

13  8.04.001 governing Religious Practices, it is the policy of DAJD that all inmates have the

14  opportunity to exercise their right to religious freedom and faith, consistent with the

15  requirements of maintaining facility security, safety, health, and orderliness. Dkt. 64-2 at 2, Ex.

16  B. Religious services, whether individual or group, must conform to safety standards and

17  security requirements. *Id*. Religious objects are allowed unless it would be a safety or security

18  risk for the requesting inmate to possess such objects. *Id*. at 3.

19         DAJD Policy Manual Section 1.01.013 governs the Use of Tobacco and Electronic

20  Smoking Devices. Dkt. 64-3 at 2, Ex. C. It is the policy of DAJD that smoking and the use of

21  tobacco-related products and electronic smoking devices is prohibited in all department facilities,

22  including King County Jail. *Id*.

23

24

1    Under DAJD Policy Manual Section 4.01.002 governing Searches and Contraband

2    Control, it is the policy of DAJD to prevent the introduction, fabrication, possession, and

3    movement of contraband in the facilities. Dkt. 64-4 at 2, Ex. D.

4    DAJD's Programs Office is primarily comprised of two Volunteer Coordinators, one of

5    whom is defendant Pohio, and a Programs Manager, defendant Garcia. Dkt. 62 at 1–2. The

6    Programs Office is responsible for all inmate programming that occurs in adult jail facilities,

7    including coordinating the needs of contractor/community-based and volunteer-based

8    organizations that provide faith-based programming and services. *Id*. at 2. The Office also

9    handles inmates requests and inquiries made directly to it or referred by a chaplain regarding

10    religious programming, services, and religious materials offered in the King County Jail. *Id*.

11    Under normal circumstances, in-person group programming is provided and non-

12    denominational chaplains are available to visit with inmates in person upon request. *Id*. at 2–3.

13    Chaplains are often the first to receive requests from inmates related to faith-based needs. *Id*. at

14    3. If the chaplain determines that the request is something new or uncommon, the request is

15    forwarded to the Programs Office's Volunteer Coordinator for that particular facility for review

16    as to whether the request can be accommodated. *Id*. The Programs Office often reaches out to

17    community volunteers or partners to accommodate specific requests. *Id*. Additionally, whether a

18    request can be accommodated depends on the request not being prohibited by the policies of the

19    King County Jail or local or state law. *Id*. The DAJD Corrections Program Administrator who

20    oversees this procedure makes the final determination. *Id*.

21    With the onset of the COVID-19 pandemic, as of March 13, 2020, all group activities and

22    face-to-face visits were suspended within all DAJD adult correctional facilities. *Id*. at 2. This

23    included group religious services, though one-on-one video or window visits were still arranged

24

1   for inmates seeking contact with a chaplain or religious advisor for spiritual guidance or support.

2   *Id*. This suspension of all group programming continued until September 2021, when facilities

3   were permitted to restart in-person group programming in a small and limited way in order to

4   comply with social distancing requirements and other COVID-19 protocols intended to keep

5   individuals safe. *Id*. at 2–3.

6          At the time of booking in a DAJD facility, every inmate receives a copy of the Inmate

7   Information Handbook, which among other things details behavioral expectations, services,

8   resources, and grievance procedures. Dkt. 64 at 2; Dkt. 64-1, Ex. A (Inmate Information

9   Handbook). The Handbook includes a section about "kites," which are written communications

10  between an inmate and staff about an inmate's concerns or special needs. Dkt. 64-1 at 4. The

11  Handbook directs inmates to use a "white kite" to make requests for the chaplain, religious

12  services, religious diet needs, and any other requests for spiritual and emotional matters not

13  handled by the Jail Health/Mental Health department. *Id*. at 4–5. The Handbook also provides

14  inmates with step-by-step instructions on how to file grievances seeking resolution of a specific

15  complaint or concern, as well as how to appeal adverse decisions to a filed grievance. *Id*. at 6.

16         Between January and June 2021, defendant Pohio was the point-person to respond

17  initially to an inmate's faith-based requests at King County Jail either submitted by white kite or

18  referred to her by a chaplain. Dkt. 62 at 2. If a specific request by an inmate was denied, it was

19  defendant Pohio's practice to send or ask the chaplain to send a "reverse kite" back to the inmate

20  explaining the decision. *Id*. at 3. An inmate then had the option of filing an Inmate Grievance

21  Report describing their grievance or complaint. *Id*. Defendant Pohio reviewed the Inmate

22  Grievance Report and responded with a decision. *Id*. If the complaint/request was denied, the

23

24

1    inmate then had the opportunity to appeal the decision to defendant Pohio's supervisor,

2    defendant Garcia, for final determination. *Id*.

3        A review of DAJD Programs Office records indicates that plaintiff submitted several

4    white kites as well as a grievance related to faith-based issues while housed at King County Jail.

5    *Id*. at 3–4. On November 18, 2019, plaintiff submitted a kite asking, "What Native American

6    religious services are provided here?" Dkt. 62-1 at 2, Ex. A. Defendant Pohio states that,

7    although there is no response written on the bottom of the kite, she has knowledge that there

8    were no organized religious services specifically provided for Native Americans in the King

9    County Jail at that time, and plaintiff would have been informed of that fact. Dkt. 62 at 4. Rather,

10    non-denominational group religious services were provided. *Id*.

11        On January 26, 2020, plaintiff submitted a kite requesting a Bible and religious guidance.

12    Dkt. 62-1 at 3. In response, plaintiff was visited by a chaplain. *Id*.

13        On February 18, 2020, plaintiff submitted a kite requesting to be placed back on the list

14    to attend non-denominational church services. *Id*. That request was accommodated. *Id*.

15        On February 22, 2021, plaintiff submitted an Inmate Grievance Report stating, "I feel that

16    there is a substantial burden placed on my right to exercise my religion how I want to. I have not

17    been able to smudge or go to a sweat lodge since I was locked up in 2018. Under federal and

18    state law I have a right to exercise the religion of my choice." Dkt. 62-2 at 2, Ex. B. In addition,

19    plaintiff stated, "I wrote a kite to the chaplain asking if there is anybody that does Native

20    American religious ceremonies here and they told me there are no religious anything for Native

21    Americans here." *Id*.

22        Defendant Pohio responded to the Inmate Grievance Report on February 24, 2021,

23    stating, "There are no group religious services during the Coronavirus pandemic for health safety

24

1   precautions, preventions, and protections, under WA State and King County guidelines. You

2   may submit a white kite and request a religious visit via window telephone with a jail chaplain."

3   *Id*. at 3. In her declaration, defendant Pohio states that she did not interpret his grievance as being

4   specifically a grievance regarding a prohibition on smudging, but rather interpreted it as a

5   grievance regarding the lack of religious services for Native Americans generally. Dkt. 62 at 5.

6       Plaintiff appealed defendant Pohio's response with a Grievance Appeal filed on March 2,

7   2021. Dkt. 62-2 at 3. In the appeal, plaintiff states,

8       There is an error in the initial decision. The jail chaplain is a Christian, our beliefs
        are different and the way we exercise our religions is also completely different. I
9       am a Native American and if all I can get is a religious visit then I need it to be a
        Native American of my same religion. There is a religious leader that visits the
10      Christians so there needs to be a religious leader that Native Americans can receive
        visits from because we have our own religion with a unique set of values, beliefs,
11      practices, and rituals. Also, your initial response did not actually address my
        complaint, I am complaining that there are literally no group religious services or
12      religious visits for Native Americans during the pandemic or not during the
        pandemic. It's my right to exercise the religion of my choice and I cited some
13      authorizing sources in my initial complaint. Also, see the resolution I am seeking
        that I wrote on the other side.

14  Dkt. 62-2 at 3.

15      Defendant Garcia responded on March 3, 2021, with a final decision as follows:

16
17      Our Chaplain provides spiritual guidance through non-denominational views. He
        can help provide any materials from any religious group if you provide him a source
18      for your religious affiliation. We are happy to reach out to a religious group leader
        regarding Native American beliefs. If you can help us identify someone who may
19      be willing to help. DAJD has reached out over the years to various groups and
        partner with groups willing to serve in our jails.

20  *Id*.

21      On March 24, 2021, plaintiff submitted a kite identifying Gabe Galanda as a possible

22  person in the community who may be available to come into the Jail to assist with Native

23

24

REPORT AND RECOMMENDATION - 10

1  American spiritual guidance and/or religious programs. Dkt. 62-3 at 2, Ex. C. Defendant Pohio

2  contacted Mr. Galanda by email but received no direct response. *Id*. at 3–6.

3        On April 28, 2021, plaintiff submitted a kite requesting a visit from the chaplain. Dkt. 62-

4  4 at 2, Ex. D. On May 4, 2021, Chaplain Timothy met with plaintiff and later informed defendant

5  Pohio by email that plaintiff's purpose for the visit was to request permission to perform the

6  Native American ceremony called smudging with other Native American inmates. *Id*. at 5.

7  Chaplain Timothy provided defendant Pohio with an information sheet regarding the practice of

8  smudging. *Id*. The sheet describes smudging as a cleansing ritual involving burning a variety of

9  dried herb clippings wrapped together (sage, sweet grass, cedar, lavender, and tobacco) in a

10  fireproof bowl, while using hands or feathers or fans to allow the smoke to gather around the

11  body and spirit in areas that need spiritual healing. *Id*. at 7. Chaplain Timothy explained to

12  plaintiff that he would pass on plaintiff's request to defendant Pohio, but explained that many

13  religious practices cannot be accommodated because they violate specific jail regulations. *Id*. at

14  5. In her declaration, defendant Pohio states that, after reviewing the information sheet on

15  smudging and DAJD policies, she determined that smudging would not be permitted under

16  DAJD rules and regulations because it involves an inmate possessing flammable material (which

17  may include tobacco) which is then lit on fire to create smoke. Dkt. 62 at 7. Flammable

18  materials, including tobacco, are considered contraband, and no flames are permitted inside the

19  facility due to the risks of self-harm, attack on other inmates, attack on staff, and fire in the

20  building that could injure people inside and/or require an evacuation. *Id*. For these reasons,

21  defendant Pohio instructed Chaplain Timothy to deny plaintiff's request and clearly state to him

22  that "smudging is prohibited and not authorized inside locked secured perimeter." Dkt. 62-4 at 5.

23

24

1    Thereafter, Chaplain Timothy sent a note to plaintiff denying his request to smudge for those

2    reasons. *Id*. at 6.

3        After receiving Chaplain Timothy's denial of the request to smudge, plaintiff did not file

4    a further Inmate Grievance Report or appeal the initial decision in any way. *See* Dkt. 62 at 8. He

5    did subsequently submit further white kites in August and October 2021, asking for a book

6    entitled, "An Introduction to Buddhism" and a copy of the Quran, respectively. Dkt. 62-1 at 5.

7                                    **DISCUSSION**

8        In their motion for summary judgment, defendants argue: (1) plaintiff's claim for

9    injunctive relief against King County should be dismissed because plaintiff is no longer housed

10   at the King County Jail; (2) plaintiff's claims relating to the request for smudging should be

11   dismissed because plaintiff failed to exhaust his administrative remedies prior to filing this

12   lawsuit; (3) plaintiff's First Amendment claim against defendant Garcia should be dismissed

13   because she did not participate in any act violating plaintiff's constitutional rights and she cannot

14   be held liable in a supervisory capacity; (4) plaintiff's claims against defendants Pohio and

15   Garcia are subject to dismissal on the basis of qualified immunity; and (5) plaintiff's First

16   Amendment and RLUIPA claims should be dismissed because there is a legitimate penological

17   interest in prohibiting smudging in the King County Jail, and doing so furthers a compelling

18   governmental interest by the least restrictive means. Dkt. 60. After setting forth the standard for

19   summary judgment, the Court will discuss these arguments in turn.

20   **I.    Legal Standard**

21       "The court shall grant summary judgment if the movant shows that there is no genuine

22   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

23   Civ. P. 56(a). When ruling on a summary judgment motion, the Court must take the evidence in

24

1  the light most favorable to the nonmoving party and must draw all reasonable inferences in that

2  party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once the moving party

3  has carried its burden under Rule 56, the party opposing the motion "must do more than simply

4  show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*

5  *v. Zenith Radio*, 475 U.S. 574, 586 (1986).

6       The opposing party cannot rest solely on his pleadings but must produce significant,

7  probative evidence in the form of affidavits, and/or admissible discovery material that would

8  allow a reasonable jury to find in his favor. *Anderson*, 477 U.S. at 249–50. Conclusory

9  allegations and mere speculation are not enough to create a genuine issue of material fact. *See,*

10 *e.g.*, *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The

11 purpose of summary judgment "is not to replace conclusory allegations of the complaint or

12 answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871,

13 888 (1990). "If a party fails to properly support an assertion of fact or fails to properly address

14 another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary

15 judgment if the motion and supporting materials—including the facts considered undisputed—

16 show that the movant is entitled to it[.]" Fed R. Civ. P. 56(e)(3). Finally, because plaintiff is *pro*

17 *se*, the Court "must consider as evidence in his opposition to summary judgment all of

18 [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on

19 personal knowledge and set forth facts that would be admissible in evidence, and where

20 [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true

21 and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

22

23

24

## II.      Claim for Injunctive Relief

Defendants argue that the Court should grant summary judgment in their favor on plaintiff's claim for injunctive relief because plaintiff left the King County Jail in April 2022 to begin serving a 101-month sentence and there is no expectation that he will be transferred back to the Jail at any time in the near future, as his latest projected release date is February 7, 2025. *See* Dkt. 60 at 12. As a result, defendants argue, plaintiff's request for injunctive relief is moot. *Id*. Plaintiff has not come forward with any evidence in opposition. *See* Dkt.

A prisoner's claims for injunctive relief based on the conditions in a specific facility are rendered moot once he or she is transferred from that facility, unless the prisoner can demonstrate a reasonable expectation of returning to the original facility. *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991). The burden of showing a reasonable expectation of returning to the original facility is firmly on the plaintiff. *Nelsen v. King County*, 895 F.2d 1248, 1251 (9th Cir. 1990); *see also Sample v. Johnson*, 771 F.2d 1335, 1342 (9th Cir. 1985).

Here, plaintiff has requested that the Court direct King County to draft a policy recognizing and protecting his right to practice his religion freely. Dkt. 8 at 9. However, because plaintiff was transferred in April 2022 from the King County Jail into Washington Department of Corrections' custody, any claim for injunctive relief relating to the conditions at the King County Jail are now moot. *See Johnson*, 948 F.2d at 519. Therefore, the Court recommends that summary judgment be granted in favor of defendants as to plaintiff's claim for injunctive relief.

## III.     Exhaustion of Administrative Remedies

Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, he must first exhaust all available administrative remedies. The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a) provides that: "[n]o action shall be brought with respect to

1    prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined

2    in any jail, prison, or other correctional facility until such administrative remedies as are

3    available are exhausted." Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v.*

4    *Churner*, 532 U.S. 731, 739 (2001). All "available" remedies must be exhausted. *Id.* Even when

5    the prisoner seeks relief not available in grievance proceedings, notably money damages,

6    exhaustion is still a prerequisite to suit. *Id.* at 741. Claims that are not exhausted under the PLRA

7    must be dismissed, not stayed. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). The

8    PLRA exhaustion requirement applies to claims brought under RLUIPA and the First

9    Amendment. *See Ramirez v. Collier*, 142 S. Ct. 1264, 1275 (2022).

10           Once the defendant proves there was an available administrative remedy and the offender

11   failed to exhaust that available remedy, the burden shifts to the plaintiff. The plaintiff must show

12   there was something about his particular claim which made the "existing and generally available

13   administrative remedies effectively unavailable to him." *Williams v. Paramo*, 775 F.3d 1182,

14   1191 (9th Cir. 2015) (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

15           Here, defendants argue that plaintiff has failed to exhaust his administrative remedies

16   with respect to his request to smudge in the King County Jail. Specifically, they contend that

17   plaintiff failed to pursue the grievance process and exhaust his administrative remedies after his

18   request to smudge was denied by the chaplain on May 4, 2021. *See* Dkt. 60 at 13 (citing Dkt. 8 at

19   13, "document 1"). While there does not appear to be a record of plaintiff appealing that May 4,

20   2021 denial, as plaintiff alleges in his amended complaint, his request to smudge began in

21   January 2021 when he submitted a white kite inquiring whether there were any religious services

22   for Native Americans in King County Jail. *See* Dkt. 8 at 4–5. Further, when he submitted his

23   related Inmate Grievance Report on February 22, 2021, he stated, in part, "I feel that there is a

24

substantial burden placed on my right to exercise my religion how I want to. I have not been able to smudge or go to a sweat lodge since I was locked up in 2018." Dkt. 62-2 at 2, Ex. B. He added, "I wrote a kite to the chaplain asking if there is anybody that does Native American religious ceremonies here and they told me there are no religious anything for Native Americans here." *Id*.

Defendant Pohio responded to the Inmate Grievance Report on February 24, 2021, but did not address plaintiff's specific complaint regarding his inability to smudge or go to a sweat lodge. *Id*. at 3. Rather, she informed plaintiff that there were no group religious services during the Coronavirus pandemic and suggested plaintiff submit a white kite for a visit with a jail chaplain. *Id*. While defendant Pohio declares here that she did not interpret his grievance as one complaining of a prohibition on smudging, but rather interpreted it as one regarding the lack of religious services for Native Americans generally, *see* Dkt. 62 at 5, there is no question that plaintiff raised a complaint regarding the inability to perform a smudging ceremony in his Inmate Grievance Report, *see* Dkt. 62-2 at 2.

Further, plaintiff appealed defendant Pohio's response with a Grievance Appeal filed on March 2, 2021. Dkt. 62-2 at 3. In the appeal, plaintiff complains that there should be access to a Native American religious leader in the Jail to accommodate for Native American's "unique set of values, beliefs, practices, and rituals." *Id*. He then expressly states that there are no group religious services offered to Native Americans. *Id*. Defendants' evidence shows that smudging is one of those group religious services. *See* Dkt. 62-4 at 7. Defendant Garcia issued a final decision as to plaintiff's filed grievance, but did not directly address plaintiff's complaint regarding smudging. *See* Dkt. 62-2 at 3.

The fact that neither defendant Pohio nor defendant Garcia interpreted plaintiff's February 2021 grievance and March 2021 appeal from the denial of that grievance as relating directly to his request to smudge does not necessarily mean that plaintiff did not utilize the grievance process to seek resolution of his complaint regarding access to the specific religious ceremony or ritual at issue here. In fact, as interpreted by the Court, plaintiff did fully utilize that process and, therefore, it cannot be said that plaintiff failed to exhaust his administrative remedies with respect to his requests that began in February 2021. Although defendants' evidence does show that plaintiff may not have fully exhausted his administrative remedies for a similar request initiated on May 4, 2021, at the time plaintiff filed this lawsuit on May 8, 2021, he had already fully exhausted his previous request. Further, even though plaintiff attaches the chaplain's note denying his May 4, 2021 request to smudge to his amended complaint, the record shows that the attachment does not relate to plaintiff's previous efforts to exhaust his initial grievance initiated in February 2021, as plaintiff's appeal from the denial of that grievance had already been denied by May 4, 2021. *See* Dkt. 8 at 13; Dkt. 62-2 at 3. As such, the Court recommends that defendants' motion for summary judgment on this argument regarding exhaustion of administrative remedies be denied.

## IV.    First Amendment Claim Against Defendant Garcia

Defendants argue that defendant Garcia is entitled to summary judgment on plaintiff's First Amendment claim relating to his request to smudge because defendant Garcia was not involved in the decision to deny plaintiff's request. Dkt. 60 at 14–15. More specifically, defendants claim that, because plaintiff failed to file a grievance regarding the denial of his request to smudge on May 4, 2021, as a supervisor who reviews grievance appeals, defendant Garcia had no involvement in that decision. *Id.* at 15. However, as set forth above, the Court has

already determined that plaintiff's grievance filed in February 2021 did in fact reference a request to smudge. *See supra*, at 15–16. Moreover, defendant Garcia personally denied plaintiff's appeal from the denial of that grievance. *See* Dkt. 62-2 at 3. It is this grievance and appeal by plaintiff that are at issue in this case. *See* Dkt. 8. As such, the Court cannot say that defendant Garcia was not involved in the decision regarding this earlier request to smudge. Therefore, the Court recommends that defendants' motion for summary judgment on this issue regarding defendant Garcia's personal involvement be denied.

## V.    The Prohibition on Smudging in the King County Jail

Defendants argue that plaintiff has failed to establish a First Amendment claim and a RLUIPA claim with respect to his request to smudge in the King County Jail. The Court will address these claims separately.

### A. First Amendment Claim

A prisoner's free exercise rights are protected by the Constitution. *See Cruz v. Beto*, 405 U.S. 319 (1972) (per curiam). However, significant consideration must be given to the judgment of prison officials in determining the limitations on a prisoner's free exercise rights. *Bell v. Wolfish*, 441 U.S. 520, 562 (1979). To establish a free exercise claim, the prisoner "must show the [prison officials] burdened the practice of [his] religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled in part on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). *See also Turner v. Safley*, 482 U.S. 78, 89 (1987) (a prisoner's constitutional rights may be impinged upon by a prison regulation if the regulation "is reasonably related to legitimate penological interests."). This reasonableness standard applies even if the violation of a fundamental right is alleged, *see*

*id.*, or if the conduct at issue is a central tenet of a prisoner's religious beliefs, *see O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). In order to determine if a regulation is reasonable, a court examines: (1) whether there is a valid, rational connection between the regulation and the asserted governmental interest; (2) whether alternative means of exercising a right remain available; (3) the impact of the regulation on prison staff, other prisoners, and prison resources; and (4) the availability of ready alternatives to the regulation. *See Turner*, 482 U.S. at 89–91.

Here, it is not in dispute that defendants rejected plaintiff's request to engage in the Native American religious ceremony of smudging in the King County Jail. Thus, the Court will consider the *Turner* factors to determine whether defendants' action is reasonably related to legitimate penological interests.

       *a.  Rational Connection Between the Regulation and Asserted Governmental Interest*

The first question is whether there is a rational relationship between a legitimate penological interest and the regulation at issue. Turning to the regulations at issue, DAJD Policy Manual Section 1.01.013 states that smoking and the use of tobacco-related products is prohibited in facilities such as King County Jail. Dkt. 64-3 at 2. Further, DAJD Policy Manual Section 4.01.002 states that the introduction, fabrication, possession, and movement of contraband is prohibited in facilities such as King County Jail. Dkt. 64-4 at 2. Finally, under DAJD's General Policy Section No. 8.04.001 governing religious practices, religious services must conform to safety standards and security requirements. Dkt. 64-2 at 2. Religious objects are allowed unless it would be a safety or security risk for the prisoner to possess such objects. *Id.*

According to defendants, the legitimate penological interest in prohibiting smudging is that "both active flame and flammable materials [used for smudging] constitute a significant danger to inmates, staff, and the facility, be it danger of fire within the facility, danger of setting

off smoke alarms or heat detectors and creating a situation that requires an evacuation of

inmates, danger of self-harm, danger of attack on staff with the object, danger of attack on

another inmate with the object, or using the object to destroy or consume other types of

contraband (such as smoking illegal drugs or tobacco)." Dkt. 66 at 3. In addition, defendants note

that, at or around the time of plaintiff's request to smudge, the country was in the midst of the

COVID-19 pandemic and, as a result, the regulations in place at that time enforced social

distancing, the use of face masks, and prohibited prisoners from congregating in close groups for

any purposes, including for religious ceremonies. *Id*. at 4. In fact, all group religious

programming was cancelled from March 2020 until just recently. *Id*.

Plaintiff has failed to come forward with any evidence refuting defendants' contentions

as to a legitimate penological interest in prohibiting the act of smudging in the King County Jail.

Based on the record, the Court finds that defendants have shown that the prison regulations in

place at the time of plaintiff's request that prohibited smudging, an act that involves igniting a

flammable bundle of dried herbs including tobacco, were rationally related to the legitimate

penological interests of the safety and security of prisoners, staff, and the facility itself.

    *b.  Alternative Means of Exercising Right*

The next question is whether plaintiff has an alternative means of exercising his First

Amendment rights. *Turner*, 482 U.S. at 90.

Defendants offer that, due to the lack of an open-air yard area for proper ventilation at the

King County Jail, the safety and security concerns of permitting an individual to possess a

flammable and ignited object, as well as the ongoing health threat due to COVID-19 at the time

of plaintiff's request, the only alternative would have been for plaintiff to engage in the

smudging ceremony at a facility other than King County Jail. Dkt. 66 at 5. However, because at

1    the time plaintiff was a pretrial detainee awaiting trial on felony offenses in the King County

2    Superior Court, there were no available alternative means for accommodation. Dkt. 60 at 24.

3    Even so, the record shows that officials informed plaintiff that the Jail's chaplain could provide

4    spiritual guidance through non-denominational views, and that they were willing to reach out to

5    a Native American religious group leader plaintiff recommended. Dkt. 62-2 at 3.

6         Plaintiff has failed to come forward with any evidence to dispute defendants' statements

7    with respect to an alternative means of exercising plaintiff's rights at issue. Based on the record,

8    the Court finds that defendants have shown that, while the only alternative to accommodate

9    plaintiff's request to perform the smudging ceremony itself would have involved a transfer to

10   another facility, that alternative itself was unreasonable in light of the circumstances. Moreover,

11   defendants have shown that plaintiff retained an alternative means of exercising his right to

12   practice his religion, albeit through spiritual guidance rather than smudging at the Jail.

13        c.  *Impact on Prison*

14        The third question asks what impact the requested accommodation will have on inmates,

15   prison staff, and prison resources generally. *Turner*, 482 U.S. at 90. "[C]ourts should be

16   particularly deferential to the informed discretion of corrections officials," especially when the

17   accommodation of a constitutional right will "have a significant 'ripple effect' on fellow inmates

18   or prison staff." *Id*. Decisions regarding prison security are "peculiarly within the province and

19   professional expertise of corrections officials, and, in the absence of substantial evidence in the

20   record to indicate the officials have exaggerated their response to these considerations, courts

21   should ordinarily defer to their expert judgment in such matters." *Pell v. Procunier*, 417 U.S.

22   817, 827 (1974).

23

24

1    Defendants argue that it would have been untenable to transfer plaintiff to another facility

2  where smudging may be permitted while his case was still pending in King County Superior

3  Court. Dkt. 66 at 5. The Court agrees. This accommodation would have a negative impact on the

4  orderly operation of the jail, a "ripple effect" that could lead to other prisoners seeking similar

5  but unfounded accommodations. Furthermore, plaintiff has failed to come forward with any

6  evidence disputing defendants' argument here.

7        d.   *Alternatives to Regulation*

8    The fourth and final question asks whether there are easy alternatives to the regulation

9  that could be implemented at a minimal cost to legitimate penological interests. *Turner*, 482 U.S.

10  at 90-91.

11    Defendants argue that, at the time of plaintiff's request, there did not appear to be any

12  ready or reasonable alternatives to the smudging ceremony itself in the King County Jail. Dkt. 66

13  at 5. Again, in light of the prohibition on smoking and/or use of tobacco at all DAJD facilities, as

14  well as the safety and security concerns, this seems to be the case. And here plaintiff has failed to

15  come forward with any evidence to the contrary.

16    In sum, this Court finds the absence of a workable alternative is evidence that defendants'

17  prohibition on engaging in a smudging ceremony at King County Jail is reasonable. *See Turner*,

18  482 U.S. at 90–91 (also finding "if a claimant can point to an alternative that fully accommodates

19  the prisoner's rights at de minimis cost to valid penological interests, a court may consider that

20  as evidence that the regulation does not satisfy the reasonable relationship standard").

21    For the above reasons, this Court finds plaintiff has failed to meet his burden of proving

22  any material questions of fact remain that the regulations at issue have impinged his First

23

24

1   Amendment rights. Therefore, this Court recommends summary judgment be granted in favor of

2   defendants and plaintiff's First Amendment claim be dismissed with prejudice.

3   **B. RLUIPA**

4   RLUIPA provides in relevant part:

5   No government shall impose a substantial burden on the religious exercise of
    a person residing in or confined to an institution . . . even if the burden results

6   from a rule of general applicability, unless the government demonstrates that
    imposition of the burden on that person—

7
        (1) is in furtherance of a compelling governmental interest; and
8
        (2) is the least restrictive means of furthering that compelling
9   governmental interest.

10  42 U.S.C. § 2000cc-1.

11      A plaintiff "bears the initial burden of going forward with evidence to demonstrate a prima

12  facie claim" that the challenged state action constitutes "a substantial burden on the exercise of his

13  religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). If the plaintiff is

14  able to meet this burden, the state then must prove "any substantial burden" on the "exercise of his

15  religious beliefs is both 'in furtherance of a compelling governmental interest' and the 'least

16  restrictive means of furthering that compelling governmental interest.'" *Id.* (quoting 42 U.S.C. §

17  2000cc-1(a), citing 42 U.S.C. § 2000cc-2(b)) (emphasis in original).

18      RLUIPA does not define "substantial burden." *San Jose Christian Coll. v. City of Morgan*

19  *Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). However, as the Ninth Circuit has explained, to be

20  considered a "substantial burden," the challenged state action "must impose a significantly great

21  restriction or onus upon [religious] exercise," such that it "intentionally puts significant pressure on

22  inmates . . . to abandon their religious beliefs." *Warsoldier*, 418 F.3d at 995–96. The government

23  "must place more than an inconvenience on religious exercise." *Guru Nanak Sikh Soc'y of Yuba*

24

*City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks omitted). "The

diminishment of spiritual fulfillment—serious though it may be—is not a 'substantial burden' on

the free exercise of religion." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1070 (9th Cir.

2008). In considering a challenge to institutional policies, the Court considers whether the

government's conduct "'denies [an important benefit] because of conduct mandated by religious

belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his

beliefs.'" *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124–25 (9th Cir. 2013)

(quoting *Warsoldier*, 418 F.3d at 995 (alteration in original)). On the other hand, the Supreme

Court has not read RLUIPA as elevating the "accommodation of religious observances over an

institution's need to maintain order and safety." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005).

Indeed, "prison security is a compelling state interest," and "deference is due to institutional

officials' expertise in this area." *Id.* at 724 n.13.

Here, defendants argue, as they did with respect to plaintiff's First Amendment claim, that

because prohibiting smudging at the King County Jail furthers a compelling governmental interest

with no lesser restrictive alternatives, plaintiff's RLUIPA claim should be dismissed against all

defendants. Dkt. 60 at 25. In support, defendants assert that preserving the safety, order, and

efficient management of the Jail, as well as the safety and security of the prisoners and staff, are

the compelling governmental interests at issue in this case. Dkt. 66 at 6. Further, given the physical

limitations of the facility, there is no least restrictive alternative that would still involve flammable

items, fire, and smoke. *Id.* Plaintiff has not come forward with any evidence to refute defendants'

contentions here.

While RLUIPA requires that an entity refusing an accommodation demonstrate its policy is

the least restrictive means of furthering its alleged compelling interests, prison officials are not

required to refute every conceivable option to satisfy the least restrictive means requirement, nor

are they required to prove that they considered less restrictive alternatives at a particular point in

time, they need only refute alternatives offered by the prisoner. *Holt v. Hobbs*, 574 U.S. 352, 371–

72 (2015) (Sotomayor, J., concurring) (citing *United States v. Wilgus*, 638 F.3d 1274, 1289 (10th

Cir. 2011)). The record demonstrates that after plaintiff was advised of available alternatives to

practicing his religion by smudging, he submitted a kite identifying an individual who may have

been available to come into the Jail to assist with Native American spiritual guidance and/or

religious programs. Dkt. 62-3 at 2. Before officials could secure contact with that individual,

plaintiff submitted another kite, this time requesting a visit from the chaplain in order to again

request permission to perform a smudging ceremony. Dkt. 62-4 at 5. Without a response from

plaintiff to the instant motion, by virtue of plaintiff's subsequent request to smudge, the Court is

left to assume that plaintiff deemed the potential alternative unacceptable. Under RLUIPA, it was

incumbent upon plaintiff to offer alternatives that he did in fact deem acceptable. Plaintiff failed to

do so here. As a result, the Court is satisfied that defendants considered the most obvious least

restrictive means for plaintiff to practice his religion. They were not required to do more in the

absence of any additional input from plaintiff on alternatives. Because defendants have satisfied

their burden of showing, under RLUIPA, that prohibiting smudging at the King County Jail

furthers a compelling governmental interest with no lesser restrictive means, the Court

recommends that summary judgment be granted in their favor as to this claim.

## VI.    Qualified Immunity

Defendants argue that the Court should dismiss plaintiff's First Amendment and RLUIPA

claims for damages against defendants Pohio and Garcia because they are entitled to qualified

immunity. Qualified immunity requires an assessment of whether the official's conduct violated

1    "'clearly established constitutional or statutory rights of which a reasonable person would have

2    known.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*,

3    137 S. Ct. 548, 551 (2017)).

4         Here, the Court has already concluded that plaintiff has failed to succeed on the merits of

5    his First Amendment and RLUIPA claims. Therefore, it is not necessary to address defendants'

6    qualified immunity argument. *Cf. Wilson v. Layne*, 526 U.S. 603, 609 (1999) ("A court

7    evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged

8    the deprivation of an actual constitutional right at all, and if so, proceed to determine whether

9    that right was clearly established at the time of the alleged violation.' . . . Deciding the

10    constitutional question before addressing the qualified immunity question also promotes clarity

11    in the legal standards for official conduct, to the benefit of both the officers and the general

12    public." (internal citations omitted)).

13    **VII.    IFP on Appeal**

14         Plaintiff should not be granted IFP status for purposes of an appeal of this matter. IFP

15    status on appeal shall not be granted if the district court certifies "before or after the notice of

16    appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P. 24(a)(3)(A); *see*

17    *also* 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if he seeks review

18    of an issue that is "not frivolous," and an appeal is frivolous where it lacks any arguable basis in

19    law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v. Williams*, 490 U.S.

20    319, 325 (1989). Because an appeal from this matter would be frivolous, IFP status should not be

21

22

23

24

granted for purposes of appeal.

## CONCLUSION

The undersigned recommends that defendants' motion for summary judgment (Dkt. 60) be granted and that plaintiff's claims be dismissed with prejudice. The Court also recommends that plaintiff's IFP status not be granted for purposes of appeal.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 17, 2023**, as noted in the caption.

Dated this 1st day of February, 2023.

J. Richard Creatura
United States Magistrate Judge